In re Belcher WELLS, Sr. & Jackie P. Wells, Debtors.

Sherman B. Lubman, Trustee, Plaintiff,

v.

Belcher Wells, AKA Belcher Wells, Sr., Jackie P. Wells, & Eddie Wells, Defendants.

Bankruptcy No. 00–30601–T.
Adversary No. 01–3126–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Feb. 14, 2003.

---

**11.** Fed. R. Bankr.P. 9011(c).

William C. Parkinson, Jr., for Chapter 7 Trustee.

Lawrence L. Moise, III, Abingdon, VA, Douglas E. Carey, Portsmouth, VA, for Defendant, Eddie Wells.

Michael P. Regan, Danville, VA, for Debtors/Defendants.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

In this adversary proceeding, the trustee filed a complaint to obtain approval for the sale of real estate free and clear of liens and interests. The realty is known as "Trailer City Lots," and record title is held in the names of debtors Belcher Wells Sr. and Jackie P. Wells. Debtors' relative, defendant Eddie Wells, claims the property under an oral contract to purchase. The trustee, debtors, and defendant Eddie Wells entered into a joint stipulation of facts and submitted the case on brief.

For reasons stated in this opinion, the court finds that the trustee holds legal title to the realty and that the oral contract is void. The court further finds that defendant Eddie Wells holds a constructive trust interest in the property to the extent of his payments under the oral agreement.

## FINDINGS OF FACT.

### Procedural History.

On July 6, 2001, the trustee filed a complaint requesting authority to sell the subject realty free and clear of any liens and including a request to avoid an oral contract for the sale of the same. Eddie Wells filed an answer seeking determination that the oral contract is valid.

After a series of pre-trial and status conferences in this adversary proceeding, the parties agreed to submit a joint stipulation of facts and briefs upon which the court could rule. Following these submissions a hearing was held pursuant to Eddie Wells' request to present evidence on an additional issue omitted from the joint stipulation of facts. Subsequently, the court delayed ruling while the parties attempted, unsuccessfully, to reach a settlement.

### Facts.

At the time of their bankruptcy filing debtors were record owners as tenants by entireties of Lots 7 and 8, Trailer City Subdivision, located in Mecklenburg County, Virginia. Prior to filing, in November 1995 debtors orally agreed to sell the realty to defendant Eddie Wells. An unsigned deed of gift dated March 18, 1997, was prepared in furtherance of this agreement and was to be executed and delivered to Eddie Wells only after he completed payment of $40,000.00 at a rate of $500.00 per month.[1] At or around the time of the agreement debtors transferred possession of the realty to Eddie Wells, who assumed responsibility for paying real estate taxes, property insurance, repairs, and maintaining the property.

For the duration of this agreement and until the time debtors filed this chapter 7 case, Eddie Wells made his monthly pay-

---

1. The 2001 tax appraisal value for Trailer City Lots is $39,000.00.

ments as well as repairs and improvements to the real property. This included the replacement of three water pumps and payment of the property taxes either directly or through debtors. Eddie Wells does not have receipts for all of his repair efforts, nor could he afford to fully insure the property. Despite this, the risk of loss to the property was entirely on him pursuant to the oral agreement. In accordance with the parties' agreement, Eddie Wells paid a total of $31,600.00 to debtors, leaving a balance of $8,400.00 unpaid at the time debtors filed chapter 7.

### DISCUSSION AND CONCLUSIONS OF LAW.

The court must determine what interest the trustee acquired in Trailer City Lots when the debtors filed their bankruptcy petition and whether the trustee can sell the realty free and clear of the purchaser's interest in debtors' pre-petition oral contract to sell.

The parties dispute the effects of the Virginia statutes concerning parol contracts relating to real property. See Va. Code Ann. §§ 11–1 & –2. Section 11–1 provides that "[e]very contract, not in writing, made in respect to real estate or goods and chattels ... made for the conveyance or sale of real estate ... shall be void, both at law and in equity, as to purchasers for value and without notice and creditors." Id. Section 11–2(6) states that

> [u]nless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought ... (6)[u]pon any contract for the sale of real estate, or for the lease thereof for more than a year.

Id.

In this case debtors' contract to sell Trailer City Lots was not in writing. On that basis, § 11–1 makes the contract invalid at law. However § 11–2(6) of the code permits an action to be brought on a contract or agreement for the sale of real estate when it is evidenced by some memorandum or note in writing, signed by the party to be charged or his agent. See § 11–2(6).

Debtors and Eddie Wells produced several documents to support the existence of their contract. These include the 1997 unsigned deed of gift, which alone will not meet the standards of § 11–2. There are also several receipts creating a partial record of payments on the contract from Eddie Wells to Jackie Wells. In addition, there are documents indicating Eddie Wells was the insured homeowner for the property from October 10, 1997, to October 10, 1998, and then again from October 10, 1998, to October 10, 1999. See Def. Ex. F–1, –3. The aggregate of these writings appears to satisfy the requirements of Virginia Code § 11–2. However, the court must also consider the parties' performance under their agreement.

Parol contracts for the sale of real estate can be removed from the statute of frauds by part performance. See Cannon v. Cannon, 158 Va. 12, 163 S.E. 405, 407 (1932), stating that parol contracts can be considered by a court of equity when

> (1) the parol agreement relied upon is certain and definite in its terms; and (2) the acts relied upon to prove part performance refer to, result from or are made in pursuance of the agreement proved; and (3) where the agreement has been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation.

Id. at 19, 163 S.E. 405.

From the documents and stipulations in the instant case, the terms of the

732

contract are made clear. The documents submitted by Eddie Wells show a portion of his payments, and the parties have stipulated that he paid $31,600.00 to debtors upon their oral agreement, leaving a balance of $8,400.00. These actions were clearly in pursuit of the oral agreement. Thus there is sufficient proof of the parties' part performance of the agreement for the sale of Trailer City Lots to satisfy Virginia Code § 11–2(6).

■ Even so, the Bankruptcy Code presents another hurdle to Eddie Wells' claim. The trustee can successfully argue that 11 U.S.C. § 544(a)(3) permits his acquisition of Trailer City Lots free and clear of any legal interest held by Eddie Wells. Section 544(a)(3) states that

> [t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by... (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

*Id.* Also, under Virginia's recording statutes "the trustee in bankruptcy, as a lien creditor, takes the bankrupt's real estate free from most hidden interests." *In re Smith,* 348 F.Supp. 1290, 1293 (E.D.Va. 1972) (interpreting Virginia's three recording statutes, Virginia Code §§ 11–1, 55–95, and 55–96, as they effect the trustee's interest). Further, an interest in property can be validly asserted only from the time it is duly admitted and recorded. *See* Va.Code Ann. § 55–95.

Here the parties never recorded their transaction for the property. A bona fide purchaser could have obtained good title to Trailer City Lots despite the debtors' transfer of possession to Eddie Wells, and pursuant to § 544(a)(3) the trustee may then take legal title to Trailer City Lots.

■ Despite the bona fide purchaser provisions of the Bankruptcy Code and the state recording statutes, *In re Smith* suggests, that mere legal title to property cannot be held to defeat equitable claims to the same title. *See id.* at 1294. The court in *In re Smith,* following precedent of the Virginia Supreme Court, held that § 11–1's provisions "did not affect the doctrine of resulting trusts as theretofore established in Virginia" and "that the section 'has no application to resulting trusts.'" *Id.* at 1294. *See Straley v. Esser,* 117 Va. 135, 83 S.E. 1075 (1915).

■ Section 541(a)(1) states that debtors' bankruptcy estate consists of "all legal and equitable interests of the debtor." *Id.* Section 541(d) expands upon this, stating

> [p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as ... debtor retain[ing] legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

*Id.* From § 541(d) it would appear that despite the trustee's § 544(a)(3) powers as a bona fide purchaser, the trustee can take title only to the extent that debtors have title. If the debtors do not have an equitable interest in Trailer City Lots, then the trustee takes only bare legal title subject

to equitable encumbrances that can be proved.

Eddie Wells argues that given the oral contract between himself and debtors and the years of payments that he had made to debtors in reliance on their contract he has an equitable interest in Trailer City Lots and that the bankruptcy estate and debtors' creditors would be unjustly enriched if the trustee is not required to honor Wells' equitable interest.

■■ Eddie Wells further argues that his equitable interest is in the form of a constructive trust, a form of equitable interest this court has previously recognized. In *Citizens Fed. Bank v. Cardian Mortgage Co. (In re Cardian)*, 122 B.R. 255 (Bankr.E.D.Va.1990), this court stated that

> Virginia law permits a constructive trust to be imposed in the situation where the alleged constructive trustee acquires property or a fund of money from the beneficiary... Where the retention of ownership would unjustly enrich the title holder, the title holder is subject to a duty to convey to one entitled to the property in equity.

*Id.* at 259. Virginia law also requires that a constructive trust be established through clear and convincing evidence and that the underlying "agreement which is the basis of a constructive trust may be proven by competent parol testimony." *See Sutton v. Sutton*, 194 Va. 179, 185, 72 S.E.2d 275 (1952). With the evidence earlier discussed, an oral agreement that could serve as the basis of a constructive trust has been sufficiently established. However, state law imposes both mechanical and substantive requirements prior to the imposition of a constructive trust.

As for the substantive requirement discussed in *Cardian*, if Eddie Wells has no interest in the property despite his years of payments on the oral agreement and instead the estate retains ownership of the Trailer City Lots' title, the court agrees that debtors' bankruptcy estate will be unjustly enriched.

■ The additional, mechanical requirements of a constructive trust include the identification of a res. *See Secretary of Labor v. Moseley (In re Alamance Knit Fabrics, Inc.)*, 251 B.R. 293, 295 (M.D.N.C. 1999). A legal or equitable transfer of the res to the constructive trustee must also be established. *See Cardian*, 122 B.R. at 261. Finally "where a trust relationship exists between a debtor and creditor, and the res is commingled with other interests, the creditor must trace the res in order to enjoy constructive relief." *Id.* at 259. *Cardian* also suggests that "the proper time period for tracing trust assets ends upon the filing of a petition in bankruptcy. Property held in trust by the debtor does not become property of the estate under 11 U.S.C. § 541." *Id.* at 260.

Accordingly, the court identifies the res in this case as the legal title to Trailer City Lots. It was to be retained by debtors until Eddie Wells paid all of the agreed price for the property. This shall be considered a transfer to retain security interest according to the broad definition of 11 U.S.C. § 101(54).[2] Debtors' interest in this res was further transferred to the trustee at the time debtors filed their bankruptcy petition. Thus at the commencement of debtors' case the trustee held legal title subject to the equitable interest in Trailer City Lots in favor of

---

**2.** "'[T]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of debtor's equity of redemption." 11 U.S.C. § 101(54).

Eddie Wells to the extent he can trace his interest in payments he made to debtors.

 To determine the extent of Eddie Wells' equitable interest in Trailer City Lots the court must consider "the constructive trust claimant's position ... [compared to] the potential unjust enrichment of other creditors in the bankruptcy." *Old Republic Nat. Title Ins. v. Tyler (In re Dameron)*, 206 B.R. 394, 400 (Bankr. E.D.Va.1997), (quoting Emily L. Sherwin, *Constructive Trusts in Bankruptcy*, 1989 Ill. L.Rev. 297, 306, 326 (1989)), *aff'd on other grounds*, 155 F.3d 718 (4th Cir.1998). *Dameron* follows the standard that the "concept of constructive trust is not inherently incompatible with the fair treatment of creditors in bankruptcy." *Id.* at 400. *Dameron* also held that in order for a claimant "to be entitled to the benefit of a constructive trust under Virginia law, 'a claimant's money must be "distinctly traced" into the chose in action, fund, or other property which is to be made the subject of the trust.' " *Id.* at 403 (quoting *Crestar Bank v. Williams*, 250 Va. 198, 462 S.E.2d 333, 335 (1995)). Such tracing "justifies the preferential treatment that such creditors gain in bankruptcy." *Id.* The court finds that in this case parties' stipulation and the absence of commingled assets abrogate the requirement of tracing. Eddie Wells has paid $31,600.00 on his agreement with debtors. The other payments, repairs, and investments Eddie Wells made to Trailer City Lots were not agreed to or proved. Thus, Eddie Wells' equitable interest in the transferred res is valued at $31,600.00.

In summary, the court finds that the oral, unrecorded contract for the sale of land between debtors and Eddie Wells is invalid. However, Eddie Wells has an equitable interest in Trailer City Lots in the form of a constructive trust in the amount of $31,600.00. Under 11 U.S.C. § 541, the trustee holds legal title to Trailer City Lots subject to this constructive trust. Finally, in accordance with 11 U.S.C. § 363(f) the trustee will be authorized to sell Trailer City Lots free of all liens and interests. The value of the Eddie Wells' constructive trust interest will attach to the proceeds.